Our final case for this morning is Christopher Harris v. United States, 1933-63, and we should have Ms. Molloy and Mr. Wright, and we appear to have them. So, Ms. Molloy, you may proceed. Good morning, Your Honors. May it please the Court, Margaret Adama Molloy for Petitioner Appellant, Mr. Christopher Harris. Mr. Harris, a nonviolent drug offender, is serving nearly an extra decade in prison for recidivism enhancement that the government agrees was and is unwarranted. He's in this position because of the errors of his trial counsel, which here rise to the level of ineffective assistance under Strickland. This Court should reverse for three reasons. First, the undisputed facts demonstrate that Mr. Harris, as a matter of law, received ineffective assistance here. Second, at a bare minimum, Mr. Harris is entitled to a remand for a hearing on his Section 2255 motion. And third, Mr. Harris, a pro se petitioner representing himself before the District Court, adequately raised the issue to preserve it for appellate review. So, can I ask you a different question, Ms. Molloy? The question really deals with Strickland in 2255, or for that matter, even 2254 cases. I'm not sure the word I want to use. How harsh do we want to be, or how exacting do we want to be on lawyers to raise arguments that either haven't been well established at the time, or maybe are still in the realm of a somewhat novel argument, although available. And as we like to say sometimes, well, somebody had to be the first Gideon. Somebody had to be the first Booker. Somebody had to be the first whoever they were. But it seems that this argument about the positional, geometric, and optical isomers was in its infancy at the time of Mr. Harris's case. And so, are we going to say, even though it was within its infancy, that the attorney was performing deficiently for the Sixth Amendment by not raising it? Your Honor, this court addressed that question in Jones v. Zatecki in 2019, where defense attorneys around Indiana had been missing an argument that was clear from the text, just like the one is here. And the court held that it's no excuse for providing a client with constitutionally deficient representation to follow the crowd. And here, the prevailing norm that Mr. Harris… Although it wasn't just following the crowd. In Jones v. Zatecki, I'll remind you, the Indiana Supreme Court itself had spoken twice about this omnibus date that was at issue in that case. And it said, no, we really mean it. It's part of Indiana statutes, and nothing really justified trial courts all over the place in Indiana just overlooking it. And I don't know if we're in quite the same position here. Your Honor, our position is that although the isomer argument specifically had not yet been developed, two prevailing norms had been established for defense counsel that together make it ineffective for Mr. Harris' counsel to have failed to raise this argument. The first prevailing norm is the one recently reiterated by this court in Bridges, relying on Brock Miller, which also dealt with the Controlled Substances Act, in which this court held that defense counsel for competent representation must at least evaluate whether their client could benefit from the defendant-friendly categorical approach. Bridges emphasized that this is especially the case where their client faces a dramatic increase in their sentence based on the recidivist enhancement. And just to underscore the point, I take it at least since 1986, the definition of cocaine has included optical and geometric isomers, right? So maybe you're not a chemistry major, and you don't know what an isomer is, but if you go and look at the statute, you would find the definition. And you would discover two kinds of these things called isomers mentioned, whereas the Indiana statute just says any isomer. That's correct, Your Honor. So not only is the prevailing norm that defense counsel must investigate the categorical approach well-established, the prevailing norm that competent attorneys every day must read statutes and discern plain language is also a prevailing norm that is extremely well-established, including by this court in Brock Miller. Here, simply comparing the statutory definitions would reveal that the Indiana definition refers to any isomer, and the Federal Controlled Substances Act definition refers more specifically to only two isomers. And this court in Ruth and De La Torre held that this was a matter of clear, plain language, so much so that it reversed the district court on plain error review, concluding the incongruity between the statutes was clear or obvious. And so the flaw that you're focusing on, then, isn't counsel's lack of some sophisticated chemistry knowledge. It's that he didn't pick up the Indiana statute and look at the federal statute and see whether they matched. Absolutely. And counsel's obligation to do that is now very well-established in this circuit, reiterated by its very recent decision in Bridges, which says that, you know, counsel must sit down and undertake that evaluation, particularly when their client faces dramatic enhancement in their sentence. And the consequences could not have been more severe here, where Mr. Harris's underlying conviction was based on purchasing eight ounces of methamphetamine, and the government was proposing to rely on two decades-old nonviolent drug offenses in order to, in his trial court's evaluation, apply a potential life sentence. Clearly, as this court held in Bridges in reliance on the D.C. Circuit's decision in Winstead, where your client is facing such severe consequences, more attention must be paid to this crucial issue. And here, the attention that deserved to be paid required no more than sitting down and comparing the two statutes and recognizing and discerning plain language. What if counsel was afraid that by raising this argument, the court wouldn't accept it, and then the government filed and amended 851, and suddenly this poor man is facing a life in prison sentence? Your Honor, we submit that although in other cases, like Bridges, for example, where the attorney may have had strategic and reasonable considerations, they're failing to push an argument that had not yet been accepted. Because in those cases, those are different, because in those cases, there were mitigating arguments that the attorney was prioritizing. Here, he failed to raise the only argument that was available to him, and to the extent it could be reasonable to attempt to avoid the government pushing the life sentence, that is not a strategic justification that can warrant his counsel's failure to raise the argument to the government in plea negotiations to leverage more favorable terms. It also can't justify his counsel's failure, which he is required to do under Brock Miller, to competently estimate a likely sentence and communicate the results of that analysis to his client. Here, no strategic justification. I'm not sure how that gets us out of the realm of strategy. That's the problem, is because once you get into that strategy realm, it's virtually unchallengeable. But how isn't that type of analysis, giving choices, making recommendations, how is that not strategic? Your Honor, as an initial matter, if the court is concerned that Mr. Harris's attorney may have had a strategy that at most goes to whether it should remand, it's well established that counsel must at least have made a determination and recognize the possibility of relief to weigh those strategies. Regarding whether, regarding the strategy there, you're right. You're right. Communicating the results of his analysis to his client or raising it to the government does not go to trial strategy, but of course, it does, it is required, and the record is void of any indication that that occurred here. I'd like to reserve my briefly remaining time. Two seconds, I might even give you a little bit. Mr. Brites. May it please the court. Brian Brites for the United States. This court should not extend Bridges to what Your Honor Judge Wood referred to as arguments in their infancy. In fact, Mr. Bridges here today said that the isomer argument had, quote, not been, had not been developed. Under the prevailing norms standard and the well accepted standard that defense attorneys don't have to predict changes in the law, defense attorneys cannot be deficient for failing to predict arguments that have not been developed. Why are we calling it, though, Mr. Brites, the isomer argument? It looks pretty obvious. You know, if Congress hadn't put this in the statute, I would feel quite differently about it. But Congress actually wrote down optical and geometric isomers, and different states, you know, Indiana and Illinois, for two that we run into, have chosen, obviously Indiana has now changed things, but at the time, have chosen to have a broader definition. Different isomers, if I remember my very dusty old, you know, year-long bout with chemistry in college, will respond differently. They'll have different potencies. They'll have different effects. They'll bond with different things in different ways. So it seems to me any lawyer could look at it and say, look at that. You know, Congress specifies two of these things. Illinois says three of them. Indiana says any. Maybe I better look into that for a minute. Are these different substances? Your Honor, let me respond to that in two ways. First of all, I think is mainly a prevailing norm standard. Attorneys weren't doing that. So this court in 2019, which was back two years after Mr. Bridges, Mr. Harris, excuse me, was sentenced, raised attacks on Indiana cocaine statutes. That's Anderson, Smith, and Williams. None raised isomer arguments. You know, I litigated one of those, and we thought we would win, but we thought it was a difficult statutory case. Of course, the government has taken many losses in the categorical approach. So, I mean, those are three extremely good defense attorneys before this court didn't raise the isomer issue. The one attorney, it seems, who had at the time that Mr. Harris was sentenced was out of the Fifth Circuit, and that attorney lost. And I understand that this is sort of getting into a strategy thing, but just if without looking at in retrospect, if Mr. Harris's attorney had done the research that Bridges says he should have done, he would have found one loser. And I think representing a client staring down the face of a barrel of a life sentence, he rightly would have been reluctant to pursue that argument. So, while I agree with Your Honor, of course, the isomer is a statutory-based argument. That's not something that attorneys either in this district, this circuit, or really nationally were raising at the time. They, I think, logically initially mounted a frontal assault on the language about the financing. That was a big issue, yes. I remember that phase. Yes, I think that was the starting point. I think that was a logical starting point. That's the type of argument that, again, the government has lost, maybe not on the financial, but it's the type of argument that the government has lost in categorical approach arguments nationally quite frequently. We did win that one. The isomer argument, while it's statutory, I think is unquestionably more esoteric than just saying financing is not a normal controlled substance offense. So, Mr. Brodnick here would have had to be at the forefront of the scientific-based argument, and I don't think Strickland or even Bridges requires that. So, here's what worries me about that. I think you're probably right, he would have been at the forefront, but there's a bit of an element, looking at the law as a whole, of heads we win, tails you lose. So, if he's not providing ineffective assistance of counsel by failing to raise a newish argument, all right, maybe we assume people are practicing within the mainstream. But then, when we get to the question, is this a new rule or is this an old rule, we're constantly saying things like, well, so-and-so forfeited this point, so-and-so waived this point, because everybody understood Taylor was out there. Everybody understood something else was out there. And so, we're very quick to criticize counsel for not being what I was saying is the first Gideon or Booker or whatever person you want to put in there. It seems like it's a double standard. You know, I'm not sure that's right, but what I would say is that prisoners may raise collateral attacks on predicate convictions, and they can win. Now, of course, Mr. Harris waived that right. So, I don't – this doesn't eliminate an avenue for prisoners in general to make such attacks. So, I don't – it's not exactly a heads, they lose, tails, we win, because there is still an avenue, even if their attorney didn't raise it. But in this particular case, it's ineffective assistance. And I think following the prevailing norms and following the requirement that defense attorneys don't have to predict changes to the law, we should win. Now, we recognize that, you know, Bridges paints us somewhat into a corner, but Bridges set the standard that there has to be some foreshadowing. So, I think this case is really about whether there is that foreshadowing. Bridges had a circuit-level decision in their favor. I think it's quite one thing to say an attorney should find another circuit-level decision. That strikes us as understandable, not that we – again, not that we agree with Bridges, although we're not attacking it here today. That's a reasonable line for the court to draw. I don't know if it's reasonable to say every attorney must be at the forefront. If not, they're ineffective. I don't think that's what Bridges or the Supreme Court's precedents on this point stand for. We would also, again, distinguish Bridges on the way it came to this court. So, I think it was important. You know, I can't say how, but I do think it was important to the Bridges panel that the district court had set a rule that I don't think is particularly practical, that if there's no binding precedent on point, a defense attorney can't be deficient, and that there's obvious problems with that that don't exist here. And with that said, I do just want to switch quickly to the strategic reason. Now, of course, we don't have that in the record. So, if the court gets to the issue of whether it's strategic, that's going to take a remand for rehearing. But if the court does reach that point, which, again, we don't think they should, I think it's important before courts call a defense attorney deficient, constitutionally deficient, they should be given an opportunity to explain their potential strategy in a hearing. That's what this court's precedents say. That's what happened in Bridges. That's what happened in Brockmiller and Gaylord. So, that's the standard practice for this court. And I think, I don't know if this is what Mr. Brodnick thought, but it is easy to contemplate or conceive of a strategic reason. There were, we see three potential outcomes sentencing-wise for Mr. Harris. That's a guideline sentence of 121 to 151. 1851, that's 240 months. 2851, which is life in prison. It strikes us as eminently reasonable that an attorney may look at that and a defendant may look at that and say, I'll take the 240 instead of risking a life sentence. Now, I don't know if that happened here, but that would be a strategy. And strategy is essentially non-reviewable. And we think that before this court, without giving a defense attorney an opportunity to defend himself and his potential strategy, it should remain for a hearing. Though, again, we would stress that we think that this case rises and falls on the lack of foreshadowing under Bridges. So, if there are no further questions, the government would ask this court to affirm the district court. Thank you. All right, thank you. Ms. Malloy, I'll give you a full minute. I won't limit you to five seconds. Thank you, Your Honor. So, first, Bridges reiterated, and this is fundamental here, that defense counsel with a client facing a recidivist enhancement must at least compare statutory definitions. The next steps are established by other cases, which require investigation into that inquiry and research. Do we know, Ms. Malloy, excuse me, do we know whether the attorney here did undertake that comparison? Or is that, again, something, if we thought it was important, we would need a hearing for? We don't. And based on Bridges and Brockmiller, we need to at least determine whether counsel undertook that inquiry. Here, had he done so, he should have recognized, based on the plain language, as this court held in Ruth and De La Torre, that the Indiana statute was overbroad. And I see that my time is out. And thank you so much for this court's time. We respectfully ask that this court reverse. Thank you very much for your assistance to the court. Thanks as well, of course, to the government. The court will take the case under advisement, and we will be in recess for today.